1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9  Sylvia Garza,                          )   No. CV 07-1948-PHX-JAT
                                          )
10              Plaintiff,                 )   **ORDER**
                                          )
11  vs.                                    )
                                          )
12                                         )
    Michael J. Astrue, Commissioner of Social )
13  Security,                              )
                                          )
14              Defendant.                 )
                                          )
15  _____)

16

17         Plaintiff appeals the Social Security Commissioner's denial of disability benefits. The

18  Court now rules on Plaintiff Sylvia Garza's Motion for Summary Judgment (Doc. #18) and

    Defendant Commissioner's Cross Motion for Summary Judgment (Doc. #22).

19  **I.    Background**

20         **A.    Procedural Background**

21         Plaintiff, Sylvia Garza, filed an application on November 15, 2004 for Supplemental

22  Security and Disability Insurance benefits based on a combination of physical impairments.

23  (Tr. 17).  The Agency denied the claim initially and upon reconsideration.  On January 31,

24  2007, an Administrative Law Judge ("ALJ") issued an unfavorable decision after a hearing.

25  (Tr. 14-22).  The ALJ's decision became the final decision of the Commissioner on August

26  11, 2007, when the Appeals Council denied review.  (Tr. 7).

27

28

1

**B.     Medical Background**

2       On May 12, 2004, Ms. Garza was treated at Banner Thunderbird Medical Center for

3   low back pain radiating into the buttocks and hips.  (Tr. 266-269).  An X-ray revealed mostly

4   normal results.  The doctor diagnosed her with back pain with joint inflammation and acute

5   lumbosacral strain.   (Tr. 266-67, 269).   The hospital discharged her after prescribing

6   Ibuprofen and 20 Vicodin with no refills.  (Tr. 267, 269).

7       Ms. Garza returned to Banner Thunderbird Medical Center on May 31, 2004 with pain

8   in her back and hips.  She reported that her pain might be related to recent cleaning and

9   moving items around the house.  Ms. Garza was diagnosed with acute lumbosacral strain and

10   given a prescription for Naprosyn, Vicodin, and Flexeril.  (Tr. 268-69).

11       On August 12, 2004, Ms. Garza again sought treatment for low back and hip pain

12   attributed to arthritis.  (Tr. 231-32, 256-56a).  The doctor ordered an EKG and X-rays of the

13   low back and hips and also prescribed Ibuprofen 600 mg.  (Tr. 231-32, 256-56a).  The X-rays

14   of the hips came back normal, and the X-rays of the low back revealed lumbar discogenic

15   disease and facet artropathy.  (Tr. 248, 260).

16       Ms. Garza received treatment on September 11, 2004 for lumbar back pain and hip

17   pain.  Her doctor diagnosed her with osteoarthritis of the hips and the low back.  (Tr. 229-

18   230, 255, 256a).  The doctor also found that Ms. Garza was in the early stage of diabetes and

19   recommended a low fat diet.  (Tr. 230, 256a).

20       On September 25, 2004, Ms. Garza's doctor diagnosed osteoarthritis of the hips and

21   low back, degenerative joint disease of the low back, and anxiety.  (Tr. 228, 254a).  The

22   doctor prescribed Motrin 800 mg and Xanax.  (Tr. 227, 254).  The doctor also recommended

23   that Ms. Garza continue with weight loss.  (Tr. 227-28, 254-54a).

24       On March 26, 2005, Ms. Garza was treated for back and hip pain, with swelling and

25   arthritis.  (Tr. 225-26).  On examination, there was a decreased range of motion of the back.

26   (Tr. 225-26).  The doctor ordered a bone density scan and labs to rule in arthritis.  (Tr. 225-

27   26).

28

1    Dr. Malcolm McPhee, a specialist in physical medicine and rehabilitation, reviewed

2    Ms. Garza's medical records and performed a consultative examination of her on April 11,

3    2005. (Tr. 197-201). Dr. McPhee diagnosed Ms. Garza with diffuse myofascial tenderness

4    of the lumbar spine. (Tr. 197-201). Dr. McPhee opined that Ms. Garza could, in particular,

5    lift and carry 50 pounds occasionally and 25 pounds frequently. (Tr. 197-201).

6    Treating records from May 21, 2005, show that Ms. Garza complained of numerous

7    ailments, including: left-sided back and hip pain, headaches, right blurry vision, allergies,

8    fatigue, left ankle pain, and stiffness in the arm. (Tr. 223-24). She was diagnosed with

9    lumbar discogenic disease, metabolic syndrome, previous gallbladder removal, elevated liver

10   function, and radicular pain. (Tr. 223-224). The doctor prescribed Vicodin. (Tr. 224).

11   In June 2005, the results of a bone densitometry came back within normal limits. (Tr.

12   246). Also in June 20005, an MRI revealed mild central spinal stenosis and mild left-sided

13   neuroforaminal stenosis at L4-S1 and moderate to severe degenerative disc space and small

14   posterior disc protrusion, which did not compromise the spinal canal, at L5-S1. (Tr. 242).

15   In an undated opinion, sent by fax on September 21, 2005, Dr. Wayne Finley, Ms.

16   Garza's treating physician, wrote that Ms. Garza suffered from degenerative disc disease of

17   the lumbar spine and bilateral hip pain. (Tr. 249). Dr. Finley opined, in particular, that Ms.

18   Garza could stand or walk only from 2 to 6 hours a day, could sit less than six hours a day,

19   and could lift 10 pounds occasionally and less than 10 pounds frequently. (Tr. 249-5).

20   In October of 2005, Ms. Garza was treated for mild diabetes mellitus, arthritis, and

21   spinal stenosis. (Tr. 211). The doctor referred her to an orthopedist, but did not believe that

22   referral to a neurologist was appropriate in the absence of radicular symptoms. (Tr. 212).

23   On October 11, an unidentified doctor wrote a one-sentence note on a form that Ms. Garza

24   was "unable to work *at this time*, secondary to spinal stenosis of back." (Tr. 290)(emphasis

25   added).

26   On November 16, 2005, Dr. Neil McPhee reviewed Ms. Garza's updated treatment

27   records and diagnostic studies and examined Ms. Garza. (Tr. 183-88). Dr. McPhee noted

28

1    that Ms. Garza had received only conservative treatment with Ibuprofen, Tylenol No. 3, and

2    Vicodin.  (Tr. 183).  On examination, Dr. McPhee found mostly normal results with, in

3    particular, negative straight leg raising test and largely normal ranges of motion, although

4    Ms. Garza complained of low back discomfort with bending and lower back tenderness. (Tr.

5    184).  Dr. McPhee opined that, in an eight-hour work day, Ms. Garza could lift or carry 20

6    pounds occasionally and 10 pounds frequently.  (Tr. 184).  He further opined that she would

7    not be restricted in sitting, standing, or walking, as long as she could take breaks hourly for

8    a few minutes.  (Tr. 184).  On December 5, 2005, a State Agency physician concurred with

9    Dr. McPhee's opinion.

10         On February 17, 2006, Family Nurse Practitioner Emily McWinters referred Ms.

11    Garza to "home health" care for Ms. Garza to receive help with home care.  (Tr. 290).

12         On April 25, 2006, Ms. Garza was treated for increased lumbar pain.  (Tr. 293).  She

13    was prescribed Tylenol No. 3 and Motrin.  (Tr. 293).

14         A July 17, 2006 MRI revealed a broad-based right posterior paramedium disc

15    extrusion, which extended into the neural foramen, but no significant neurological problems.

16    (Tr. 295-96).

17         On August 10, 2006, Ms. Garza sought treatment for reported increased lumbar back

18    pain with pain radiating down the left leg.  (Tr. 292).

19         On September 12, 2006, Dr. Glen Bair, Ms. Garza's treating orthopedist, reviewed her

20    MRI and made mostly normal findings upon examination.  (Tr. 297).  In particular, straight

21    leg raising test in the sitting position was not uncomfortable and back range was minimally

22    decreased for reflexes.  (Tr. 297).  Dr. Bair recommended a home exercise program and

23    weight loss and did not feel that narcotic pain medication was appropriate.  (Tr. 297).

24         On January 4, 2007, Ms. Garza consulted with Dr. Amrani at Desert Valley Spine.

25    Dr. Amrani made mostly normal findings on examination, but noted straight leg raising

26    reproduced back pain at 90 degrees on each side.  (Tr. 299).  Dr. Armani did not believe that

27    surgery was appropriate and referred Ms. Garza to pain management for evaluation.  (Tr.

28

1   299).

2   **II.    Standard of Review**

3        A district court:

may set aside a denial of disability benefits only if it is not supported by
substantial evidence or if it is based on legal error. Substantial evidence means
more than a mere scintilla but less than a preponderance. Substantial evidence
is relevant evidence, which considering the record as a whole, a reasonable
person might accept as adequate to support a conclusion. Where the evidence
is susceptible to more than one rational interpretation, one of which supports
the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation

omitted). This is because "[t]he trier of fact and not the reviewing court must resolve

conflicts in the evidence, and if the evidence can support either outcome, the court may not

substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th

Cir. 1992). Also under this standard, the Court will uphold the ALJ's findings if supported

by inferences reasonably drawn from the record. *Batson v. Comm'r of the Social Security

Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, the Court must consider the entire

record as a whole and cannot affirm simply by isolating a "specific quantum of supporting

evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)(internal quotation omitted).

**III.   Discussion**

        To qualify for disability benefits under the Social Security Act a claimant must show,

among other things, that she is "under a disability." 42 U.S.C. §423(a)(1)(E). The Act

defines "disability" as the "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not less than

12 months." 42 U.S.C. §423(d)(1)(A). A person is

under a disability only if his physical or mental impairment or impairments are
of such severity that he is not only unable to do his previous work but cannot,
considering his age, education, and work experience, engage in any other kind
of substantial gainful work which exists in the national economy.

42 U.S.C. §423(d)(2)(A).

- 5 -

1     The Social Security regulations set forth a five-step sequential process for evaluating

2  disability claims.  20 C.F.R. §404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th

3  Cir. 1998).  A finding of "not disabled" at any step in the sequential process will end the

4  inquiry.  20 C.F.R. §404.1520(a)(4).  The claimant bears the burden of proof at the first four

5  steps, but the burden shifts to the Commissioner at the final step.  *Reddick*, 157 F.3d at 721.

6  The five steps are as follows:

7     1.  First, the ALJ determines whether the claimant is "doing substantial gainful

8  activity."  20 C.F.R. §404.1520(a)(4)(i).  If so, the claimant is not disabled.

9     2.  If the claimant is not gainfully employed, the ALJ next determines whether the

10  claimant has a "severe medically determinable physical or mental impairment."  20 C.F.R.

11  §404.1520(a)(4)(ii).  To be considered severe, the impairment must "significantly limit[] [the

12  claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §404.1520(c).

13  Basic work activities are the "abilities and aptitudes to do most jobs," for example: lifting;

14  carrying; reaching; understanding, carrying out and remembering simple instructions;

15  responding appropriately to co-workers; and dealing with changes in routine.  20 C.F.R.

16  §404.1521(b).  Further, the impairment must either be expected "to result in death" or "to last

17  for a continuous period of twelve months."  20 C.F.R. §404.1509 (incorporated by reference

18  in 20 C.F.R. §404.1520(a)(4)(ii)).  The "step-two inquiry is a de minimis screening device

19  to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  If

20  the claimant does not have a severe impairment, the claimant is not disabled.

21     3.  Having found a severe impairment, the ALJ next determines whether the

22  impairment "meets or equals" one of the impairments listed in the regulations.  20 C.F.R.

23  §404.1520(a)(4)(iii).  If so, the claimant is found disabled without further inquiry.  If not,

24  before proceeding to the next step, the ALJ will make a finding regarding the claimant's

25  "residual functional capacity based on all the relevant medical and other evidence in [the]

26  record."  20 C.F.R. §404.1520(e).  A claimant's "residual functional capacity" is the most he

27  can do despite all his impairments, including those that are not severe, and any related

28

symptoms.  20 C.F.R. §404.1545(a)(1).

4.   At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work."  20 C.F.R. §404.1520(a)(4)(iv).  To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  20 C.F.R. §404.1520(f).  If the claimant can still perform the kind of work he previously engaged in, the claimant is not disabled.  Otherwise, the ALJ proceeds to the final step.

5.   At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. §404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and his "age, education, and work experience."  20 C.F.R. §404.1520(g)(1).  If the claimant can perform other work, he is not disabled.  If the claimant cannot perform other work, he will be found disabled.  As previously noted, the Commissioner has the burden of proving the claimant can perform other work.  *Reddick*, 157 F.3d at 721.

In this case, the ALJ concluded at step four of the sequential process that Ms. Garza was not disabled.  The ALJ found that Plaintiff was capable of performing her past relevant sedentary work as a clerical worker, customs service representative/manager, account manager, and typist "because these jobs do not require the performance of work-related activities precluded by the claimant's residual functional capacity."  (Tr. 21).  The ALJ therefore found that Plaintiff had not been under a "disability" since June 17, 2004 and denied benefits.  (Tr. 21-22).

On appeal, Plaintiff does not allege the ALJ erred in his findings at steps one through three of the sequential evaluation process. Plaintiff does contend that the ALJ incorrectly assessed her residual functional capacity and erred in finding she could perform her past work. Ms. Garza argues that: 1) the ALJ failed to properly consider her subjective complaint testimony and 2) the ALJ failed to properly weigh the opinions of her treating physicians.

1

### A.    Subjective Pain Testimony

2    The ALJ found Ms. Garza's complaints regarding the degree of her pain and

3    impairments "not credible to the extent alleged." (Tr. 21).  If a claimant produces objective

4    medical evidence of an underlying impairment, as Ms. Garza did here, then the ALJ cannot

5    reject the claimant's subjective complaints based solely on a lack of objective medical

6    support for the alleged severity of the pain. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir.

7    2001).  If the ALJ finds the claimant's subjective pain testimony not credible, the ALJ must

8    make findings sufficiently specific to allow the reviewing court to conclude that the ALJ

9    rejected the testimony on permissible grounds and did not arbitrarily discredit the claimant's

10   testimony. *Id.* at 856-57.  If no affirmative evidence of malingering exists, then the ALJ must

11   provide clear and convincing reasons for rejecting the claimant's testimony about the severity

12   of her symptoms. *Id.* at 857.

13   Because no affirmative evidence of malingering exists, the ALJ had to provide clear

14   and convincing reasons for disbelieving Ms. Garza's reports of the severity of her pain.  The

15   ALJ offered the following reasons for not fully crediting Plaintiff's subjective complaints:

16
> First, neurological examinations by the consultative examining
17   doctor and by her treating physician were normal.  Second, she
> requires no ambulatory devices.  Third, she testified that she
18   now weighs 160 pounds (has lost weight).  Fourth, with regard
> to activities of daily living, she provides care for three minor
19   children, ages three, five, and fifteen.  She also drives.  Her
> activities of daily living are consistent with a conclusion that she
> would be able to perform light work.

20

(Tr.  21).

21

22   Regarding the ALJ's first reason, "while subjective pain testimony cannot be rejected

23   on the sole ground that it is not fully corroborated by objective medical evidence, the medical

24   evidence is still a relevant factor in determining the severity of the claimant's pain and its

25   disabling effects." *Rollins*, 261 F.3d at 857 (citing 20 C.F.R. §404.1529(c)(2)).  The Court

26   finds the ALJ legitimately considered the lack of corroborating medical evidence for

27   Plaintiff's claimed level of pain.

28

1    The Court finds the ALJ's second reason also supports his credibility determination.
2    Plaintiff testified that on a pain scale of one to ten, with ten being the worst pain, she would
3    rate her average pain at an eight. (Tr. 336). The ALJ noted that Plaintiff does not use any
4    ambulatory devices, such as a cane or any other device, to help her stand up, get in and out
5    of a seat, bed, etc. The ALJ could find that Plaintiff's ability to function without the aid of
6    an ambulatory device is inconsistent with such an extreme pain level.

7    The ALJ's third stated reason for discounting Plaintiff's subjective complaints was
8    that, at 160 pounds, she had lost weight. Without further elaboration, the Court cannot
9    determine the ALJ's reasoning behind that comment. The Court therefore finds that
10   Plaintiff's weight loss is not a clear and convincing reason for doubting her credibility.

11   The ALJ's fourth reason involves a discrepancy between Plaintiff's daily activities
12   and her reported amount of pain. The ALJ noted that Plaintiff cared for her three minor
13   children, ages three, five, and fifteen, and that she could drive. An ability to care for small
14   children and perform housekeeping duties can cut against a claimant's subjective complaints
15   of severe pain. *See e.g., Thomas*, 278 F.3d at 959; *Rollins*, 261 F.3d at 857. Although Ms.
16   Garza's testimony was somewhat equivocal about how well she could keep up with her
17   activities without the help of her older children, and the ALJ's interpretation of her testimony
18   might not be the only reasonable interpretation, it is still a reasonable interpretation that is
19   supported by substantial evidence. *Rollins*, 261 F.3d at 857. It is not the Court's role to
20   second-guess the ALJ. *Id.*

21   The Court finds that with his first, second, and fourth reasons, the ALJ met his burden
22   of providing clear and convincing reasons for rejecting Plaintiff's subjective pain testimony.
23   The ALJ's reasons were sufficiently specific to allow the Court to determine that the ALJ did
24   not arbitrarily discredit Ms. Garza's testimony. *Id*. at 856-57.

25
26
27
28

1

### B.     Treating Physician Opinions

Plaintiff argues that the ALJ did not attribute sufficient weight to the medical opinions of her treating physicians. By rule, the Social Security Administration favors treating physician opinions over non-treating physicians. *Orn*, 495 F.3d at 631 (citing 20 C.F.R. §404.1527). In addition, the Administration favors examining physician opinions over opinions of non-examining physicians. *Id.*

If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case, then it is given "controlling weight." *Id.* If a treating physician's opinion is not sufficiently supported by medical evidence and other substantial evidence in the case, however, the ALJ need not give the opinion controlling weight. *Id.* Further, even when a treating doctor's opinion is given the most weight in a disability case, the opinion is not binding on the ALJ regarding the existence of an impairment or the ultimate determination of disability. *Batson*, 359 F.3d at 1195.

If the treating doctor's opinion is contradicted by another doctor, the ALJ may reject the treating doctor's opinion by giving specific and legitimate reasons for doing so, rather than having to give clear and convincing reasons. *Orn*, 495 F.3d at 632. An ALJ meets his burden of providing specific and legitimate reasons for rejecting a treating physician's opinion if the ALJ sets out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Id.*

The Court disagrees with Ms. Garza that Dr. Finley's opinion is entitled to controlling weight. When filling out his Medical Source Statement of Ability to Do Work-Related Activities, Dr. Finley explicitly based his findings and conclusions on Plaintiff's reports of back and hip pain. (Tr. 249-51). An ALJ can give little weight to a treating doctor's opinion when the opinion is based on a claimant's subjective complaints. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Batson*, 359 F.3d at 1195. Moreover, the Court has already held that the ALJ properly discredited Plaintiff's subjective pain testimony. The Court finds

that Dr. Finley's assessment of Plaintiff's capabilities is not well-supported by clinical findings and other substantial evidence in the record.

Also, nothing in the October 2005 opinion, allegedly by treating physician Dr. Hiler, that Plaintiff "is unable to work *at this time*"due to spinal stenosis (Tr. 290) contradicts the ALJ's finding.  In order for Plaintiff to be under a disability, she must be unable to work for at least twelve months.  Nothing about the phrase "at this time" suggests a duration of a year, as required for a disability finding.  Morever, this brief note does not have any supporting objective medical evidence.  The ALJ therefore did not have to give any significant weight to the notation. *See B*ay*liss*, 427 F.3d at 1216 ("[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

In addition, treating physician Dr. Amrani's report regarding Plaintiff's MRI does not conflict with the ALJ's residual functional capacity assessment.  While noting degenerative disk disease at L4-5 and a small central and right-sided disk bulge at L5-S1, nothing in Dr. Amrani's chart note contradicts the ALJ's determination that Plaintiff could perform sedentary work.  (Tr. 299).

Moreover, the opinion of one of Plaintiff's treating physicians, Dr. Bair, supports the ALJ's conclusion regarding her functional capacity.  After reviewing her most recent MRI, Dr. Bair reported that he was "less impressed than the radiologist." (Tr. 297).  Although he reported disc space bulging at L4-5 and L5-S1, he did not believe those conditions could cause leg pain and noted that Superior levels were normal.  (Tr. 297).  Upon examining Plaintiff, he found that her gait and station were normal, that she could get up on her heels and toes, could squat and rise, and could kick at the level of the waist.  (Tr. 297).  Dr. Bair found that Plaintiff's back range of motion was only minimally decreased.  (Tr. 297).  He further noted that Plaintiff could perform a straight leg raise from a sitting position without discomfort.  (Tr. 297).  In the treatment plan section of his report, Dr. Bair recommended a home exercise program and weight loss, but did not recommend narcotic medications.  (Tr. 297).

Finally, the Court disagrees with Plaintiff that the opinions of the treating physicians were uncontradicted.  Because their opinions were contradicted by record evidence, the ALJ only had to give specific and legitimate for rejecting the opinions.  *Orn*, 495 F.3d at 632. The Court finds that the ALJ did that by setting out a thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Id*.  The Court holds that the ALJ properly considered and weighed the medical evidence in this case. Moreover, when the evidence supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ.  *Batson*, 359 F.3d at 1196.

Because the ALJ properly discredited Ms. Garza's testimony regarding the level of her pain and properly considered and resolved the conflicts in the medical evidence, the Court will affirm the decision of Commissioner.

Consequently,

IT IS HEREBY ORDERED GRANTING Defendant Commissioner's Cross Motion for Summary Judgment (Doc. #22).

IT IS FURTHER ORDERED DENYING Plaintiff Sylvia Garza's Motion for Summary Judgment (Doc. #18).

DATED this 23rd day of March, 2009.

James A. Teilborg
United States District Judge

- 12 -